UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**WAYNE WILSON**,                                                    Case No. 3:13-CV-00740-KI

                           Plaintiff,                                OPINION AND ORDER ON
                                                                     PLAINTIFF'S MOTION FOR
       v.                                                            PRELIMINARY INJUNCTION

**KRISTIN WINGES-YANEZ, chair of the**
**Oregon Board of Parole and Post Prison**
**Supervision, and the two board members**
**AMBER KAATZ and CANDACE**
**WHEELER, in their official capacities;**
**KIM HIROTA, Post Prison Supervision**
**Officer for Multnomah County, in her**
**official capacity**,

                           Defendants.


       Lynn S. Walsh
       209 SW Oak Street
       Suite 400
       Portland, OR 97204

              Attorney for Plaintiff


Page 1 - OPINION AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION

Jenny M. Madkour, County Attorney
for Multnomah County, Oregon
Carlos J. Calandriello
Assistant County Attorney
501 SE Hawthorne Blvd., Suite 500
Portland, OR 97214

Ellen F. Rosenblum
Attorney General
Andrew Hallman
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

       Attorneys for Defendants

KING, Judge:

Plaintiff Wayne Wilson alleges violations of substantive and procedural due process arising out of his conditions of supervision following convictions in Multnomah County. He brings suit against Kim Hirota, a Post Prison Supervision Officer for Multnomah County, and Kristin Winges-Yanz, Amber Katz, and Candace Wheeler, in their capacity as board members on the Oregon Board of Parole and Post Prison Supervision (the "Board defendants"). Pending before me is Plaintiff's Motion for Preliminary Injunction against Defendant Officer Hirota.

## BACKGROUND

Plaintiff was convicted of Robbery I and was sentenced to 90 months' imprisonment and 36 months of post prison supervision. Several months later, plaintiff was convicted of Identity Theft and sentenced to a concurrent sentence of 13 months. He was released on April 9, 2013.

Page 2 - OPINION AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff obtained the Robbery I conviction when, in October 2005, he assaulted a 65-year old woman working in a church's office and stole her purse.  Plaintiff punched the woman in the face, using a closed fist, fracturing her nose and orbital bone.

While incarcerated for these crimes, he met and married his current wife.  His current wife has never been a victim of any of plaintiff's crimes, and no child has ever been a victim or witnessed one of his crimes.

Plaintiff's criminal history involves violence against women.  In 2006, he was convicted of Assault IV–Domestic Violence and, the following month, of Assault III–Domestic Violence. In 1997, he was arrested and charged with raping his girlfriend.  He pled guilty to Assault III, but the girlfriend told police plaintiff had punched her in the face repeatedly, threatened to kill her, and that she felt forced into having sex with him out of fear.  Plaintiff has three non-expiring protection orders prohibiting him from contacting these victims.

During his incarceration for the latest convictions, Oregon Department of Corrections staff noted plaintiff was verbally abusive, threatening, and manipulative toward his wife on several occasions.  For example, he threatened to have the Department of Human Services take her kids away if she did not do what he said.

Upon plaintiff's release, the Board initially imposed a sex offender package of special conditions.  Plaintiff appealed those conditions.  At oral argument on August 16, 2013, the Board's counsel informed the Court that it had amended plaintiff's special conditions and had deleted the sex offender package.  Accordingly, the only Board-imposed condition to which plaintiff continues to object reads as follows:

Page 3 - OPINION AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

> 10. Other: Special conditions may be imposed that are not listed above
> when the Board of Parole and Post-Prison Supervision determines that such
> conditions are necessary. Submit to assessment and evaluation to develop a case
> plan for supervision and/or treatment. Consent to search of computer or other
> electronic equipment upon the request of the PO or their representative, if the PO
> has reasonable grounds to believe that evidence of a violation will be found. **Do
> not enter into or participate in any intimate relationship or intimate
> encounters with any person (male or female) without the prior written
> permission of the PO.**

Wilson Decl. Ex. 2 (emphasis added) (hereinafter "Special Condition 10"). Plaintiff contends

this condition prevents him from having a normal relationship with his wife.

In addition, plaintiff challenges conditions imposed by Officer Hirota, which he claims he

has been subject to without any notice or opportunity to be heard. The additional conditions are

as follows: (1) plaintiff was required to wear a GPS electronic monitoring ankle bracelet; (2) he

was required to live at the Shoreline on lower Burnside; (3) plaintiff was prohibited from living

with his wife; (4) before plaintiff and his wife could attend marriage counseling, plaintiff was

required to provide a release of information so Officer Hirota could "have a discussion with that

counselor." Wilson Decl. Ex. 5.

Since the time of the Complaint, Officer Hirota has modified some of the conditions

without putting the modifications in writing.[1] She has removed the GPS monitoring requirement

and has given plaintiff permission to live with his wife. The conditions remaining are: (1)

Special Condition 10 restricting plaintiff's intimate relationships, which Officer Hirota may

impose at any time and at her discretion; and (2) requiring plaintiff to sign a release so Officer

Hirota may access information shared during marriage counseling sessions.

---

[1]Her counsel agreed at oral argument that Officer Hirota would put modifications to
conditions in writing.

Page 4 - OPINION AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION

## LEGAL STANDARDS

The party moving for a preliminary injunction must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

## DISCUSSION

Plaintiff's motion is directed only against Officer Hirota. He agrees the Board is likely protected by quasi-judicial immunity with respect to any injunctive relief he seeks.

With the advent of the Board's order amending his conditions, plaintiff has narrowed the extent of the injunctive relief he seeks. He now asks the Court to enjoin Officer Hirota from enforcing Special Condition 10, any condition prohibiting plaintiff from living with his wife, GPS monitoring, and the condition that he sign a release of information for marriage counseling sessions, all of which he claims violate the substantive and procedural Due Process Clause.

Officer Hirota initially objected to an injunction, arguing (1) Younger abstention, (2) plaintiff's claims are barred by the Heck doctrine, and (3) plaintiff is not likely to succeed on the merits. Officer Hirota has withdrawn her first two arguments because no administrative proceeding is currently pending, making Younger abstention inapplicable, and Thornton v. Brown, __ F.3d __, 2013 WL 3927759 (9th Cir. July 31, 2013) (petition for en banc review pending) now precludes an argument based on the Heck doctrine. Thus, the only argument remaining for resolution is plaintiff's likelihood of success on the merits.

Page 5 - OPINION AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

A.    Substantive Due Process

    Plaintiff argues the conditions restrict his fundamental rights–they interfere with his

relationship with his wife and affect his ability to freely move without GPS monitoring–and the

government is normally prohibited from infringing a "fundamental" liberty interest, regardless of

any process provided, unless the infringement is narrowly tailored to serve a compelling state

interest.  Reno v. Flores, 507 U.S. 292, 301-02 (1993).  Plaintiff cites cases for the proposition

that the freedom to marry (even in the prison context) is a fundamental right, that having an

intimate relationship is a fundamental right, and marital privacy is a fundamental right.  See

Loving v. Virginia, 388 U.S. 1, 12 (1967) ("Marriage is one of the 'basic civil rights of man,'

fundamental to our very existence and survival."); Turner v. Safely, 482 U.S. 78, 99 (1987)

(marriage is constitutionally protected, even in prison); Roberts v. U.S. Jaycees, 468 U.S. 609,

617-18 (1984) ("freedom of association receives protection as a fundamental element of personal

liberty"); Griswold v. Connecticut, 381 U.S. 479, 485-86 (1965) (marriage involves a "right of

privacy older than the Bill of Rights").  Plaintiff contends the conditions are not narrowly tailored

to serve a compelling government interest.

    Officer Hirota responds that no one is stopping plaintiff from getting married or being

married and none of the cases plaintiff cites involve an individual on post prison supervision.

The conditions are all intended to limit the danger plaintiff poses to his friends and society.  Such

conditions are typical in that they "restrict . . . activities substantially beyond ordinary restrictions

imposed by law on an individual citizen," Morrissey v. Brewer, 408 U.S. 471, 478 (1972), and

are permitted so long as they are "reasonably related to the goal of deterrence, protection of the

public, or rehabilitation of the offender." United States v. T.M., 330 F.3d 1235, 1240 (9th Cir. 2003) (setting forth statutory requirements for federal supervised release conditions in 18 U.S.C. §§ 3583(d)(1), 3553(a)). Oregon law also permits special conditions that address criminal history and background, not just the current conviction. Weems v. Bd. of Parole, 347 Or. 586, 595, 227 P.3d 671 (2010).

Officer Hirota improperly limits the cases on which plaintiff relies. There is no question that even while on post prison supervision, plaintiff has a significant liberty interest in his relationship with his wife. See United States v. Napulou, 593 F.3d 1041, 1046-47 (9th Cir. 2010) ("significant liberty interest" in living with life partner required court to undertake "individualized review of that person and the relationship at issue" and "provide a justification for the imposition of such an intrusive prohibitory condition"); United States v. Child, 609 F.3d 1082, 1096 (9th Cir. 2012) (condition of supervised release prohibiting socializing with or dating fiancee was substantively unreasonable and could not be reimposed, pursuant to 18 U.S.C. § 3583(d)(2)).

Additionally, although Officer Hirota contends the conditions are acceptable under the rational basis test, she does not assess the conditions under the proper standard. Instead, post prison supervision conditions that infringe on fundamental rights are "reviewed carefully" and (1) must not only be reasonably related to the goals of deterrence, protection of the public, and/or defendant rehabilitation, but also (2) must involve "'no greater deprivation of liberty than is reasonably necessary' to achieve these goals[.]" United States v. Soltero, 510 F.3d 858, 866 (9th Cir. 2007) (quoting 18 U.S.C. § 3583(d)); see also Goodwin v. Hall, 508 F. App'x 670, 671 (9th

Page 7 - OPINION AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Cir. Feb. 14, 2013) (applying <u>Soltero</u> standard to constitutional challenge of state supervision

conditions).  Oregon law, too, "narrowly proscribes" conditions that interfere with "marital

rights."  <u>State v. Saxon</u>, 131 Or. App. 662, 664, 886 P.2d 505 (1994).  Indeed, such a condition is

permissible under Oregon law only if "'as a matter of fact the spouse would be a bad influence so

as to endanger rehabilitation or public safety, and, if so, what interference with marital rights less

than complete separation would serve to protect society's interests.'"  <u>Id.</u> (quoting <u>State v.</u>

<u>Martin</u>, 282 Or. 583, 589, 580 P.2d 536 (1978)).

Officer Hiroto initially prohibited plaintiff from living with his wife until she could

"assess [his] ability to comply with post prison supervision, the relative danger he posed to his

wife, and the risk of reoffending if he did move in with his wife[.]"  Hiroto Decl. ¶ 13.  She noted

plaintiff's history of violence against women and his record of failing to comply with probation

or parole conditions.  Officer Hiroto also had access to plaintiff's history of verbally abusing his

wife over the phone and in letters.  Those records describe plaintiff as "continually abusive,

disrespectful and very controlling of his wife . . . over the phone" and report "a very abusive

relationship due to the offenders [sic] extreme control he is forcing on his new wifes [sic] life."

Calandriello Decl. Ex. 4, at 1.  ODOC staff wrote plaintiff up for verbally abusing his wife over

the phone:

> These calls are continual where he constantly accuses her of cheating, etc.  Is very
> controlling of her and tells her where she can go, who she can talk to and she is to
> always be available for his calls.  Very unhealthy relationship, always trys [sic] to
> use God as a weapon of control over her.  His wife is terribly codependent.  O will
> verbally abuse and control her, then make her pray and apologize to him even
> though she has done nothing wrong.  They met while he is in prison, so they have
> never spent time together other than institution visits.  O states he wants to

change, yet has made no efforts to stop these actions against her.  Written up by a
correctional officer.

Id. at 2.

        Given plaintiff's history, and particularly the documented instances of improper

interactions with his wife and the fact that he and his wife had an institutional relationship,

Officer Hiroto has explained how the less than two month[2] prohibition on plaintiff living with his

wife was reasonably related to the goals of deterrence, protection of the public, and plaintiff's

rehabilitation.  At this juncture I find it also involved no greater deprivation of liberty than was

reasonably necessary to achieve these goals.  Plaintiff's motion for preliminary injunction on this

issue is denied.[3]

        However, I remain unconvinced by Officer Hirota's explanation for requiring a release of

information prior to plaintiff attending marriage counseling sessions.  She claims she wants to be

sure plaintiff does not pose a risk to his wife or others, and she wants to ensure the relationship is

not interfering with plaintiff's rehabilitation.  Instead, Officer Hirota has discouraged plaintiff

and his wife from attending counseling when it may be an important step in strengthening their

relationship and in teaching them to discuss disagreements and conflicts in a safe and mutually

beneficial way.  Furthermore, should plaintiff agree to sign a release, plaintiff would be less

_____

        [2]Neither party indicates how long the condition was in force.  Plaintiff was released on
April 9, 2013 and, as of the filing of his declaration on June 13, 2013, plaintiff was living with
his wife.

        [3]I attribute Officer Hirota's prohibition on plaintiff living with his wife as enforcement of
the Board's proscription on intimate relationships.  I express no opinion on the vagueness of
Special Condition 10 because Officer Hirota, the individual to whom plaintiff's motion is
directed, was not responsible for the Board's phrasing and because Officer Hirota has reasonably
construed the condition to apply only to plaintiff's wife.

Page 9 - OPINION AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION

candid in those sessions knowing his statements were not privileged and confidential. As a result, even requiring a signed release will not necessarily ensure Officer Hirota learns whether plaintiff poses a risk to his wife or others. In short, since the condition is not reasonably related to the goals of deterrence, protection of the public, and/or defendant rehabilitation, and is not the least intrusive means of achieving these goals, plaintiff is likely to succeed on the merits of this claim.

Finally, Officer Hirota imposed GPS monitoring on plaintiff because of his past problems complying with conditions of supervision and the protection orders prohibiting contact with victims. That condition, too, has been lifted given plaintiff's compliance. At this point, I find plaintiff has not met his burden of showing he is likely to succeed on this portion of his claim because he has not offered any authority suggesting GPS monitoring infringes a fundamental liberty interest.[4]

B.    Procedural Due Process

Plaintiff initially alleged the Special Conditions, including the sex offender package, violated his procedural due process rights because they were imposed on him without any individualized assessment. Plaintiff continues to challenge on procedural due process grounds the only remaining Board-imposed condition–Special Condition 10. Plaintiff also alleges Officer Hirota has "unbridled authority" to interpret the Special Conditions and to impose additional

---

[4]I note plaintiff does not challenge the GPS condition in his First Claim for Relief and, further, I question whether he could establish irreparable harm when Officer Hirota is not currently imposing the condition.

conditions, without any administrative procedure by which plaintiff may challenge her interpretation and additions.  Compl. ¶ 38.

Plaintiff's briefing on this issue was directed to the procedural due process required for imposition of the sex offender package.  Now that the Board has removed those conditions, I must assess only plaintiff's argument that Officer Hirota's imposition of the GPS tracking and marital conditions, without a hearing or an opportunity to contest them, violated his due process rights.

In order to make out a procedural due process claim, plaintiff must demonstrate (1) he has a liberty or property interest which the State has interfered with, and (2) the procedures were insufficient.  Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989).  If the conditions deprive a person of a liberty interest, they will only be upheld if the state used constitutionally sufficient procedures before imposing them.  Id.  As I have indicated above, the conditions infringing plaintiff's marital relationship interfere with a liberty interest protected by the Due Process Clause, but at this point plaintiff has not met his burden of showing GPS tracking infringes a liberty interest.

Officer Hirota's prohibition on plaintiff living with his wife for the first two months following incarceration is a permissible attempt to enforce the Board's limitation on intimate relationships, contained in Special Condition 10.  Plaintiff does not present, at this point, a persuasive argument challenging the current statutory and regulatory process the Board followed to impose Special Condition 10 and, accordingly, plaintiff has not demonstrated likelihood of success on the merits with respect to this portion of his claim.

Page 11 - OPINION AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

As for the marital release condition, because I cannot say at this point *what* process is required, I cannot find plaintiff is likely to succeed on the merits.  On the one hand, Officer Hirota does not contend that requiring a release before participating in marital counseling is the obvious, logical outgrowth of a condition imposed by the Board, such that the statutory and regulatory process followed by the Board would satisfy plaintiff's due process right.  However, she also does not persuasively argue that she has authority to impose conditions beyond those ordered by the Board, and that some other more informal process would be appropriate.  See ORS 144.101 (the *Board* has "jurisdiction over imposition of conditions of post-prison supervision"); ORS 144.104(2) ("the supervisory authority may . . . *recommend* to the . . . Board . . . revisions to the conditions of supervision appropriate to the released person's conduct in the community") (emphasis added); see also OAR 255-070-0015 (describing process by which Board amends conditions; if offender waives a hearing and consents to additional conditions, the supervising officer must notify the Board); Washa v. Or. Dep't of Corr., 159 Or. App. 207, 220, 979 P.2d 273 (1999) (while "the individual parole officer [has] some discretion as to the intensity of supervision in individual cases, the general terms are imposed by the Board").

Because I do not have sufficient information to resolve this claim, I cannot say plaintiff has a likelihood of success on the merits as to his procedural due process claim.

C.    Remaining Factors

Officer Hirota does not offer argument on the other factors the Court must consider when faced with a request for preliminary injunction.  Absent a contention from Officer Hirota to the contrary, I find plaintiff will be irreparably harmed if he is required to sign a release before

Page 12 - OPINION AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

attending marriage counseling.  Plaintiff testified that marriage counseling is "much needed . . . during this adjustment phase of our lives" and that he does not want their "marital privacy being violated."  Wilson Decl. ¶ 17.  Furthermore, "'an alleged constitutional infringement will often alone constitute irreparable harm.'"  <u>Monterey Mech. Co. v. Wilson</u>, 125 F.3d 702, 715 (9th Cir. 1997) (quoting <u>Associated Gen. Contractors v. Coal. for Econ. Equity</u>, 950 F.2d 1401, 1412 (9th Cir. 1991)).

In addition, in balancing the hardships, any injury to Officer Hirota is minimal and speculative, involving no cost or time, but plaintiff faces the prospect of an injury to his personal relationship with his wife.  As for the public interest, I do not disagree with plaintiff that it is in the public interest to return him to a normal family environment.

## CONCLUSION

For the foregoing reasons, I enjoin Officer Hirota from requiring plaintiff to sign a release prior to attending marital counseling with his wife.  I deny the remainder of plaintiff's Motion for Preliminary Injunction [14].  Since any damage due to wrongful restraint will be minimal, I do not require plaintiff to pay security.  Fed. R. Civ. P. 65(c).

IT IS SO ORDERED.

DATED this ___10[th]___ day of September, 2013.


/s/ Garr M. King_____
Garr M. King
United States District Judge



Page 13 - OPINION AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION